UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | | |
|---|---|---|
| MARIO HERAZO, YANERIS ALMONTE, | * | |
| DENIELE CHARUN,& KENAN RASABI, | * | |
| individually, and on behalf of all | * | |
| those similarly  situated, | * | |
| | * | |
| *Plaintiffs*, | * | |
| | * | |
| v. | * | **CLASS ACTION COMPLAINT** |
| | * | **JURY TRIAL DEMANDED** |
| WHOLE FOODS MARKET, INC., | * | |
| a Foreign For Profit Corporation, | * | |
| | * | |
| *Defendant*. | * | |

Plaintiffs, MARIO HERAZO, YANERIS ALMONTE, DENIELE CHARUN, and KENAN RASABI, individually and on behalf of all those similarly situated ("Plaintiffs"), sue Defendant, WHOLE FOODS MARKET, INC. ("WHOLE FOODS"), and allege:

1.      Defendant, WHOLE FOODS, nationally markets, advertises, distributes and sells several homeopathic products under its "365 Be Well" brand ("the Products") as relieving adults' and children's medical symptoms.   WHOLE FOODS' claims are welcomed by hundreds of thousands of consumers afflicted by ailments the products supposedly treat or cure.   A like number have purchased, and continue purchasing, these products for themselves and their children as the result of WHOLE FOODS' claims, without receiving any of the promised benefits.   But in fact, WHOLE FOODS' homeopathic products are worthless, and WHOLE FOODS unfairly, deceptively and unjustly enriches itself on the backs of consumers in order to turn a corporate profit.

## THE PARTIES

2.      Plaintiff, MARIO HERAZO, a Citizen of the State of Florida, who resides within the Southern District, in Broward County, Florida, purchased the WHOLE FOODS product, "Cough Ease for Kids" for his child suffering from a cough, at a Whole Foods Market located in Broward County, Florida, in November 2013, but his child did not receive the promised benefits. Mr. Herazo relied on WHOLE FOODS' representations of "Cough Ease for Kids'" ingredients and purported benefits to his child detailed herein, but for which, Mr. Herazo would not have purchased the "Cough Ease for Kids" product.

3.      Plaintiff, YANERIS ALMONTE, a Citizen of the State of New York, who resides in Kings County, New York, purchased the WHOLE FOODS product, "Cough Ease" (for adults), at a Whole Foods Market in Kings County, New York, in October 2013, as she suffered from a cough, but did not receive the promised benefits. Ms. Almonte relied on WHOLE FOODS' representations concerning "Cough Ease's" ingredients and benefits detailed herein, but for which, she would not have purchased the "Cough Ease" product.

4.      Plaintiff, DENIELE CHARUN, a Citizen of the State of Florida, who resides in the Southern District, in Broward County, Florida, purchased the WHOLE FOODS product, "Flu Ease" at a WHOLE FOODS MARKET located in Broward County, in October 2013, seeking relief, as she was suffering from the flu, without receiving the promised benefits. Ms. Charun relied on WHOLE FOODS' representations regarding "Flu Ease's" ingredients and flu symptom relief benefits detailed herein, but for which representations, she would not have purchased the "Flu Ease" product.

5.      Plaintiff, KENAN RASABI, a Citizen of the State of Florida, purchased the WHOLE FOODS product "Arnica Montana 30C," as he then suffered from pain, swelling

2

and stiffness from a bruise, at a Whole Foods Market, in Broward County, Florida, in May of 2014, without receiving any of the promised benefits. Plaintiff Rasabi relied on WHOLE FOODS' representations of "Arnica Montana 30C's" ingredients and benefits alleged herein, but for which representations, he would not have purchased the product.

6. Defendant, WHOLE FOODS MARKET, INC., a Texas Corporation and Citizen of the State of Texas, does business within Florida under the fictitious name, "Whole Foods Market," and is so registered with the Florida Department of State. WHOLE FOODS has its headquarters, offices and distribution centers in Austin, Texas, and markets, advertises, distributes and sells the products described herein within the Southern District of Florida, where the cause of action arose, and where the products were located, as well as across the State of Florida, and throughout the United States.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, as Class members' aggregate damages, exclusive of interest and costs, exceed $5,000,000; some Class members are Citizens of States different than Defendant; some Class members are Florida Citizens; Defendant is a Citizen of a foreign State; and less than two-thirds of all proposed classes in the aggregate are Citizens of the State in which the action is filed. This Court also possesses supplemental jurisdiction over State law claims pursuant to 28 U.S.C. § 1367, and § 1331.  Venue is also proper in the Southern District pursuant to 28 U.S.C. § 1391(b)(2), as many of the acts and transactions, including the advertising, distribution, sales and purchases giving rise to this action occurred in this District, and Defendant is a Foreign Profit Corporation which: (i) is authorized to conduct business

3

within this District; (ii) has established offices, stores, and distribution centers within this District; (iii) has intentionally availed itself of the laws and markets within this District by promoting, marketing, distributing and selling its products within this District; (iv) does substantial business within this District; (v) advertises to consumers residing in this District; and (vi) is subject to personal jurisdiction in the Southern District of Florida.

## FACTUAL ALLEGATIONS

### I. THE PRODUCTS

**A.    "Cough Ease for Kids"**

8.    WHOLE FOODS advertises that its "Cough Ease for Kids" actually "relieves cough due to minor throat and bronchial irritation as may occur with a cold," and "[h]elps loosen phlegms (mucus) and thin bronchial secretions to make coughs more productive," in children from 2 to 12 years of age.  WHOLE FOODS represents "Cough Ease for Kids'" "active ingredients" on packaging and advertising as follows:

> **Active Ingredients:** Antimonium tartaricum 6C, Bryonia alba 3C, Coccus cacti 3C, Drosera rotundifolia 3C, Ipecacuanha 3C, Pulsatilla 6C, Rumex crispus 6C, Spongia tosta 3C, Sticta pulmonaria 3C.

9.    Coughs come in two types, and have many causes and classifications. Coughs may be dry (no sputum) or productive (with sputum).  Coughs may be acute (sudden onset), subacute (lasting 3-8 weeks), or chronic (longer than 8 weeks). Coughs may be caused by irritants, viruses, bacteria, disease, choking, nasal drip, tumors, heart failure, or medication, and may be noted as normal, hacking, barking, etc.

4

10. Despite the many causes of coughs, WHOLE FOODS touts "Cough Ease for Kids" as medicine to relieve both types of coughs (wet and dry), regardless of its cause or classification, suggesting "Cough Ease for Kids" treats both types of coughs.

11. Several ingredients in "Cough Ease for Kids" are actually known poisons.[1]

12. Fortunately (as the substances are toxic), its ingredients are diluted 1 part to 1,000,000 or 1 part to 1,000,000,000,000. As discussed in Part III hereof, the ingredients are diluted to the point they have no biological effect on the human body.

13. As "Cough Ease for Kids" has no stated or implied purpose other than to combat a cough, its lack of efficacy renders the product worthless.

14. As "Cough Ease for Kids" sells for about $8.00 per unit based solely on the above-described false, misleading and deceptive advertising, WHOLE FOODS has wrongfully taken millions of dollars from Plaintiff Herazo and the members of the Class.

15. Plaintiff Herazo purchased "Cough Ease for Kids" for his child, who was over the age of 2 but less than 12 years of age, and suffering from a cold and cough. Mr. Herazo purchased "Cough Ease for Kids" for his child after reading, believing and relying upon WHOLE FOODS' advertising, including its representations that "Cough Ease for Kids" was effective in relieving the symptoms of a cold and cough. **Exhibit A**. Mr. Herazo administered "Cough Ease for Kids" to his child as WHOLE FOODS directed, but the child did not obtain the promised benefits. "Cough Ease for Kids" had no impact on Mr. Herazo's child's cold, cough, or any accompanying symptoms.

---

[1] Antimonium tartaricum, a/k/a antimony tartrate, is defined by the Oxford Dictionary as: "A toxic compound used in treating protozoal disease in animals, as a mordant in dyeing, and formerly as an emetic. Alternative name: potassium antimony tartrate." *Bryonia alba*, known as "White Byony," contains the toxin bryonin, which is poisonous. *Pulsatilla* is highly toxic, produces cardiogenic- and oxy-toxins, which slow the human heart and, in higher doses, diarrhea, vomiting, convulsions, hypotension and coma.

**B.**   **"Cough Ease"**

16.   WHOLE FOODS claims another of its products, "Cough Ease" (for adults) "relieves cough due to minor throat and bronchial irritation as may occur with a cold," and "[h]elps loosen phlegms (mucus) and thin bronchial secretions to make coughs more productive." WHOLE FOODS lists its "Cough Ease" product's "active ingredients":

> **Active Ingredients:** Antimonium tartaricum 6C, Bryonia alba 3C, Coccus cacti 3C, Drosera rotundifolia 3C, Ipecacuanha 3C, Pulsatilla 6C, Rumex crispus 6C, Spongia tosta 3C, Sticta pulmonaria 3C.

17.   WHOLE FOODS' advertises, markets and sells "Cough Ease" as being for adults, though it lists the same ingredients and dilutions as "Cough Ease for Kids."

18.   Despite the many causes of coughs outlined in paragraph 9, *supra*, WHOLE FOODS markets its product, "Cough Ease," as being medicine effective in relieving both types of cough (wet and dry), regardless of its cause or classification.

19.   Though "Cough Ease" (like "Cough Ease for Kids") contains toxic poisons, as outlined in footnote 1, *supra*, its ingredients are diluted 1 part to 1,000,000, or 1 part to 1,000,000,000,000, and, as discussed in Part III of this section, any former ingredients are diluted to the point they have no biological effect on the human body.

20.   "Cough Ease" has no stated or implied purpose other than to combat a cough and, as such, its lack of efficacy renders the product worthless.

21.   As "Cough Ease" sells for about $8.00 per unit based solely on the above-described false, misleading and deceptive advertising claims, WHOLE FOODS has wrongfully taken millions of dollars from Plaintiff Herazo and Class members.

22.     Plaintiff Charun, an adult suffering from a cough, purchased "Cough Ease" for her condition.   She purchased "Cough Ease" after reading, believing and relying upon WHOLE FOODS' advertising, including representations that "Cough Ease" would be effective in relieving her cough. **Exhibit B**.  Ms. Charun ingested "Cough Ease" as WHOLE FOODS directed, but did not obtain the promised benefits.  "Cough Ease" had no impact on Ms. Charun's cold, cough, or any of their accompanying symptoms.

**C.     "Flu Ease"**

23.     WHOLE FOODS advertises and markets another product, "Flu Ease."

24.     WHOLE FOODS advertises that "Flu Ease" "should be taken at the first sign of flu for temporary relief of symptoms including fever, chills and body aches," and that "[e]ach dose of quick-dissolving pellets provides relief of flu symptoms without side effects like drowsiness or risk of drug interactions."  WHOLE FOODS lists "Flu Ease's" ingredients on packaging and advertising as follows:

> **Active Ingredients:** *Anas barbariae hepatis et cordis extractum* 200CK HPUS.

25.     WHOLE FOODS' marketing, advertising and product packaging claim that "Flu Ease" "relieves symptoms of flu, such as fever, chills, body aches and pains."

26.     WHOLE FOODS makes the same claims on its internet website.[2]

27.     But the heart and liver of a Muscovy duck, at least at the dilutions claimed (as alleged in Part III hereof), can be scientifically and mathematically shown to have no medicinal value, no biological effect on humans, and are not "active ingredients."

---

[2] http://www.wholefoodsmarket.com/products/365-everyday-value-flu-ease [22 July 14]

28.     WHOLE FOODS markets "Flu Ease" to consumers, who unwittingly spend millions of dollars a year on worthless doses of the product, relying on WHOLE FOODS' representations in packaging, marketing and advertising it "relieves symptoms of flu." Plaintiffs and the Class read, believed and relied upon WHOLE FOODS' claims.

29.     The United States Center for Disease Control ("CDC") estimates that as many as 49,000 persons die from flu in any single year when virulent strains appear.[3] In April 2009, the virulent "swine flu" emerged, spreading fear as it swept into the U.S. In June 2009, the World Health Organization declared the outbreak a pandemic.

30.     In October of 2013, suffering flu symptoms, Plaintiff Charun purchased "Flu Ease," after reading, believing and relying upon WHOLE FOODS' claims that it was effective in relieving flu symptoms, *i.e.,* "fever, chills, body aches and pains." **Exhibit C**.

31.     Ms. Charun then ingested "Flu Ease," as directed on WHOLE FOODS' "Flu Ease" packaging, but obtained none of the promised results.

32.     As WHOLE FOODS' "Flu Ease" has no stated or implied purpose other than to relieve such symptoms, its lack of efficacy rendered the product worthless.

33.     Absent WHOLE FOODS' misstatements, Plaintiff Charun and the Class would not have purchased "Flu Ease" for their flu symptoms.

34.     WHOLE FOODS' "Flu Ease" sells for approximately $10.00 per unit, based on WHOLE FOODS' above-described false, misleading and deceptive claims. As a result of WHOLE FOODS' misleading and deceptive marketing and advertising, WHOLE FOODS has wrongfully taken millions of dollars from Plaintiff and the Class.

---

[3] http://www.cdc.gov/flu/about/disease/us_flu-related_deaths.htm#how-many-die

35.    To Plaintiff Charun's and the Class's detriment, what is represented as an "active ingredient" in "Flu Ease" is not "active" at all--not only because a duck's organs do not relieve flu symptoms, but because, given the numerous dilutions used in its preparation (see Part III), such organs are not even measurably present in the product.

**D.     "Arnica Montana 30C"**

36.    Another case of WHOLE FOODS' deception is "Arnica Montana 30C," whose packaging and advertising claim provides "relief of muscle aches and soreness, swelling, stiffness and bruising."  WHOLE FOODS claimed its "Arnica Montana 30C" product contained the following "active ingredients":

**Active Ingredients:** Arnica Montana HPUS 30C

37.    *Arnica Montana*, commonly known as "Wolf's Bane," "Leopard's Bane," or "Mountain Tobacco," contains the toxin helenalin, and is poisonous when taken in higher doses, causing severe gastroenteritis and internal bleeding of the digestive tract.

38.    Fortunately (as the substance is highly toxic), at its stated "30C" dilution, any former ingredients are diluted 1 part to many trillions.  As discussed in Part III, any ingredients are diluted to the point they have no biological effect on the human body.

39.    As "Arnica Montana 30C" has no stated or implied purpose other than "relief of muscle aches and soreness, swelling, stiffness and bruising," its lack of efficacy renders the product worthless.

40.    "Arnica Montana 30C" sells for approximately $6.00 per unit, based on WHOLE FOODS' above-described false, misleading and deceptive claims and, as a result, has wrongfully taken millions of dollars from Plaintiff Rasabi and the Class.

41.     In May 2014, Plaintiff Rasabi, while suffering from muscle aches and soreness, swelling and stiffness from his bruising, purchased "Arnica Montana 30C" after reading, believing and relying upon WHOLE FOODS' advertising, including its representations concerning the purported efficacy of "Arnica Montana 30C" in providing relief from the pain associated with his medical condition. **Exhibit D**.

42.     Plaintiff Rasabi took "Arnica Montana 30C" as stated on its packaging, but obtained none of the promised benefits.  It had no impact on Plaintiff Rasabi's pain.

43.     As "Arnica Montana 30C" had no stated or implied purpose other than to relieve such symptoms, its lack of efficacy rendered the product worthless.

44.     Absent WHOLE FOODS' misstatements, Plaintiff Rasabi and the Class would not have purchased "Arnica Montana 30C" for their symptoms.

45.     To Plaintiff Rasabi's and Class members' detriment, the substance represented as an "active ingredient" in "Arnica Montana 30C" is not "active" at all in the "relief of muscle aches and soreness, swelling, stiffness and bruising," because, given the numerous dilutions used in the product's preparation (as alleged in Part III hereof), such substances are not even measurably present in the product.

## II. THE NATURE & EFFECT OF THE MISLEADING MARKETING

46.     WHOLE FOODS' misrepresentations in marketing and advertising the above-alleged products' ingredients, efficacy and benefits were designed to, and did, induce reliance by reasonable consumers, including Plaintiffs and the Class.

47.     As a direct and proximate result of WHOLE FOODS' false and misleading representations, reasonable consumers, named Plaintiffs and Class members were led to believe that the Products would relieve their, and their children's, medical symptoms.

10

48.     Based on false beliefs induced by WHOLE FOODS' false and misleading representations, Plaintiffs and the Class purchased the above-stated products for themselves and for their children.   But for WHOLE FOODS' misrepresentations, Plaintiffs and the Class would not have purchased these worthless products.

49.     WHOLE FOODS' advertising was consistently false, misleading and deceptive.   WHOLE FOODS' advertising for the stated products advanced the same false and deceptive claims in the same manner.   WHOLE FOODS' misrepresentations of the stated products' efficacy were designed to, and did, mislead Plaintiffs and the Class to believe the products would relieve their own, and/or their children's symptoms.

50.     Plaintiffs and the Class relied on WHOLE FOODS' misrepresentations, and would not have purchased the stated products but for those representations.

### III. THE HOMEOPATHIC PRETEXT

51.     Each of the foregoing products are substances used in what calls itself "homeopathic medicine": a matter mentioned in the finest of print in WHOLE FOODS' packaging and advertising, yet never explained.  Homeopathic drugs are not held to the standards of non-homeopathic over-the-counter ("OTC") drugs, which require approval by the Food and Drug Administration ("FDA") after a detailed drug application, with evidence of adequate, well-controlled investigations and clinical trials by experts qualified by scientific training and experience to evaluate the drug's effectiveness on a basis from which such experts could fairly and responsibly conclude that the drug will have the effect it is represented to have under the conditions of use prescribed, recommended or suggested in its labeling or proposed labeling. 21 U.S.C. § 355.

52.     Unlike non-homeopathic OTC drugs, homeopathic drugs--including those here at issue--are not evaluated by the FDA, which has led to confusion.   Here, this confusion crosses the line into deception.   WHOLE FOODS is not only taking advantage of consumers' desire for natural medicine, but also deceiving consumers into believing that WHOLE FOODS' products are effective, regulated drugs that are held to the same standards as true medical drugs and non-homeopathic OTC drugs.

53.     Homeopathic drugs are not classified by demonstrated effectiveness, but by homeopathic "provings" in the 1800's and early 1900's, which never showed a drug's effectiveness in treating any ailment, but that it *caused* symptoms similar to the ailment. This was based on homeopathy's "law of similars"--the notion that symptoms of a disease, ailment or condition could be treated by extremely small doses of substances that produce similar symptoms in larger doses.   After "provings," homeopathic drugs were included in the "Homeopathic Pharmacopeia of the United States" ("HPUS").

54.     The FDA does not recognize homeopathic drugs as effective for anything.

55.     The HPUS does not list any drug as effective to treat symptoms, ailments or conditions, but only states how homeopathic drugs are prepared, leaving decisions on homeopathic drugs' use up to practitioners, manufacturers or distributors.

56.     The FDA has stated a "product's compliance with requirements of the HPUS . . . does not establish that it has been shown by appropriate means to be safe [or] effective." FDA Compliance Policy Guides § 400.400.

57.     Though "studies" have claimed such remedies effective, none survives scrutiny.   The 2005 Swiss Government comprehensive placebo-controlled homeopathy trials found any positive clinical effect of homeopathy is no more than a placebo effect,

12

echoing a British medical review finding homeopathic treatment "placebo therapy at best and quackery at worst."[4]  The American Medical Association and National Health Service issued statements that no scientific evidence supports homeopathic treatments.

58.     As seen below, scientific evidence refutes WHOLE FOODS' claims.

59.     Homeopathic remedies are prepared by serially diluting "natural" ingredients, and repeatedly shaking and striking them to increase their "effectiveness."

60.     Homeopathy's "centesimal" or "C scale" dilutes a substance by a factor of 100 each time.  A "2C" dilution is first diluted to 1 part in 100, then 1% of that dilution is diluted by a factor of 100, leaving one part of an original item in 10,000 parts of solution. A "6C" dilution repeats dilution 6 times, leaving an original item diluted by a factor of $100^6=10^{12}$ (1 part per trillion, or 1/1,000,000,000,000).  Later dilutions follow this pattern. The product is so diluted to be indistinguishable from the dilutant (water, sugar, alcohol).

61.     WHOLE FOODS' homeopathic products here at issue include flowers, animal organs, vegetables, metals and poisons, and (apparently so as not to poison consumers or their children), dilutions in WHOLE FOODS' products are up to 200C.

62.     The dilution of Muscovy duck heart and liver stated on the packaging and internet marketing of WHOLE FOODS' "Flu Ease," *supra*, for example, is "200CK."

63.     Since 1925, *anas barbariae hepatis et cordis extractum* has been made by pouring pancreatic juice and glucose into a 1-liter bottle.  After the duck is decapitated, 35 gms of its liver and 15 gms of its heart are placed in the bottle.  After 40 days, the duck liver/heart "autolyse" turns into a goo, which is then "potentized" using the

---

[4] Ernst, E.; Pittler, MH (1998), "Efficacy of Homeopathic Arnica: A Systematic Review of Placebo-Controlled Clinical Trials," *Archives of Surgery* 133 (11): 1187–90.

Korsakov method. "Flu Ease" is designated "200CK"--*i.e.,* the original amount receives 200 Korsakov dilutions[5]--and the resulting fluid is used to moisten 5 mg balls of milk sugar. "Flu Ease" packages are labeled "200CK." "C" is an abbreviation for centesimal, which means 1-to-100 dilution, and "CK" means "centesimal Korsakovian."[6]  "200CK" indicates an extract has been diluted $100^{200}$ times. For example, 1 mg of original duck organ autolysate, which was itself an impure mixture of thousands of different molecules, would ultimately be distributed into $1 \times 10^{400}$ mg of water.  Even assuming "Flu Ease's" duck goo was a homogenously pure preparation of a single molecule with a molecular mass of 300, at a $1 \times 10^{400}$-fold dilution, there would be about 1 molecule present in $5 \times 10^{375}$ liters--*i.e.,* about $4 \times 10^{354}$ times the volume of the world's oceans.[7]

64.    As there are about $10^{80}$ atoms in the entire observable universe, a dilution of 1 molecule into that universe would equal about 40C.  "Flu Ease" (at 200C) would thus need $10^{320}$ more universes than known to exist to possibly contain 1 molecule.[8]

65.    The laws of chemistry state there is a limit to dilution without losing an original substance entirely, known as Avogadro's constant ($6.023 \times 10^{23}$), a dilution at which there is less than a 50% chance that even a single molecule of material remains.

---

[5] A "Korsakov dilution" here involves the adding of autolyzed heart/liver solution to a vessel, emptying it without rinsing, and adding 100 drops of water, which is assumed to yield a dilution of 1:100.  Rudi Verspoor and Steven Decker, *The Dynamic Legacy: From Homeopathy to Heilkunst* 57.3.1, available at http://www.heilkunst.com/dose.html.

[6] See "The True Story of Oscillococcinum", Jan Willlem Nienhuys, available at http://www.homeowatch.org/history/oscillo.html [visited June 30, 2014].

[7] The "Avogadro constant" (see ¶65) gives $2 \times 10^{24}$ molecules per liter of duck organ autolysate, diluting which by a factor of $10^{400}$ ("Flu Ease's" claimed "200CK" dilution) would leave an infinitesimal $2 \times 10^{376}$ fraction of a molecule per liter.  In order to have even 1 molecule present would require a volume of $1/(2 \times 10^{376})$ liters--or $5 \times 10^{375}$ liters.

[8] Robert L. Park (2008), "Superstition: Belief in the Age of Science," Princeton University Press, pp. 145–146, ISBN 0-691-13355-7.

66.     Any autolyzed duck heart/liver in "Flu Ease" provides no medical benefit. At the stupendously high dilutions used to prepare the product, it can have no effect of any kind in humans because the odds are astronomically high not even a single molecule from the original "extract" could be present in the solution used to soak the balls of lactose mixed with sucrose which constitute the product sold to consumers.[9]

67.     The notion a substance could be physically absent and undetectable using the latest tools, yet relieve symptoms, as WHOLE FOODS claims, violates fundamental principles of science, and runs afoul of the dose-response relationship of pharmacology.

68.     Out of fear for safety, Plaintiffs trust WHOLE FOODS, as it misleads them to believe: (a) its Products' ingredients are "active"; (b) its Products contain ingredients in a quantity sufficient to produce a biological effect; and (c) its products are effective.

69.     In fact, (a) the Products contain no active ingredients; (b) serial dilution leaves ingredients non-existent and incapable of producing any biological effect in humans; (c) the Products have not been shown effective in relieving any symptom, and (d) basic scientific principles show WHOLE FOODS' claims are no more than a hoax.

70.     Plaintiffs and the Class thus sue to enjoin WHOLE FOODS' deception of hundreds of thousands of consumers, and recover funds taken by this unlawful practice.

### RULE 9(B) ALLEGATIONS

Rule 9(b), Fed. R. Civ. P.,  requires, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

---

[9] The final stage in the preparation of *Anas barbariae hepatis et cordis extractum* is the infusion of pure water onto the surface of tiny balls of sugar, described on "Flu Ease's" packaging as "Quick-Dissolving Pellets," causing an additional "dilution" of the   water into the vast "Korsakov dilutions" indicated by "Flu Ease's" designation as "200CK."

71.     As WHOLE FOODS misrepresented or failed to disclose the above facts, Plaintiffs are unable to name all responsible persons.  The allegations herein speak for themselves, including WHOLE FOODS' claims in packaging, website and advertising.

72.     WHOLE FOODS misrepresented any efficacy or "active" nature of its products' ingredients by claiming: (a) that "Cough Ease for Kids" relieves cough, loosens mucus or thins bronchial secretions to make children's coughs more productive; (b) that "Cough Ease" relieves adults' coughs, loosens mucus or thins bronchial secretions to make coughs more productive; (c) that "Flu Ease" relieves flu symptoms, fever, chills and body aches; (d) that "Arnica Montana 30C" relieves muscle aches and soreness, swelling, stiffness or bruising; and (e) that the stated ingredients were present in the above-stated Products in sufficient amounts to comprise "active" ingredients.

73.     In fact, the products: (a) had no effect on the symptoms WHOLE FOODS claimed; and (b) are so diluted as to be completely *in*active..

74.     WHOLE FOODS made material misrepresentations, intentional omissions, and non-disclosures detailed herein continuously throughout the class period.

75.     WHOLE FOODS made each of the material misrepresentations, omissions and non-disclosures alleged herein on the products' packaging and other media, and made misrepresentations on WHOLE FOODS' website which were designed to, and did, mislead Plaintiffs and Class members to purchase the products.

76.     WHOLE FOODS made material misrepresentations, intentional omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiffs, Class members and other reasonable consumers to purchase, ingest, and give their children the stated products based on the false belief the products would relieve their symptoms.

16

## CLASS REPRESENTATION ALLEGATIONS

### I. Class Definitions

77.    Plaintiffs bring this Nationwide Class Action for declaratory and injunctive relief, damages and other monetary relief, on behalf of the following Class:

> All persons 18 years of age or older who, while residing in the United States, purchased the products (a) "Cough Ease for Kids," "Cough Ease," "Flu Ease," or "Arnica Montana 30C," during the 4 years preceding the filing of this action.

78.    Alternatively, Plaintiffs bring a Statewide Class Action for declaratory and injunctive relief, damages and other monetary relief, on behalf of the following Class:

> All persons 18 years of age or older who, while residing in the United States, purchased the products (a) "Cough Ease for Kids," "Cough Ease," "Flu Ease," or "Arnica Montana 30C," within the State of Florida, during the 4 years preceding the filing of this action.

79.    Excluded from the Class are governmental entities, WHOLE FOODS, any entity in which it has a controlling interest, its officers, directors, affiliates, legal counsel, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded are the Court, its staff and officers, and members of their immediate families.

### II. Numerosity

80.    The Class is so numerous that individual joinder of all members is impracticable.  Due to the nature of the trade and commerce, and WHOLE FOODS' sizeable market share of the distribution and sale of homeopathic products, the number of Class members is in the hundreds of thousands and geographically dispersed. Whereas the exact number and precise identities of all Class members are unknown,

such information may be ascertained in discovery.  Disposition of the Class members' claims in a single action will provide substantial benefits to all parties and to the Court.

### III. Commonality

81.    Questions of fact and law common to Class members predominate over any questions affecting only individual members, including, but not limited to:

a.    Whether WHOLE FOODS communicated a message that the products at issue were effective in treating the identified symptoms;

b.    Whether WHOLE FOODS' efficacy claims may be shown to be false;

c.    Whether WHOLE FOODS has falsely represented that the products here at issue have benefits which they, in fact, do not;

d.    Whether WHOLE FOODS knew/should have known its claims were false;

e.    Whether WHOLE FOODS' efficacy claims were unfair and deceptive;

f.    Whether WHOLE FOODS' acts constitute the alleged violations of law;

g.    Whether Plaintiffs and Class members have sustained loss, injury in fact, actual damages, and the proper measure of those damages;

h.    Whether Plaintiffs and the Class are entitled to compensatory damages, including actual and statutory damages and interest thereon, and monetary restitution;

i.    Whether WHOLE FOODS acted willfully, recklessly, and/or with gross negligence in committing the violations of the law alleged herein;

j.    Whether Plaintiffs and Class members are entitled to punitive damages;

k.    Whether Plaintiffs and the Class are entitled to declaratory/injunctive relief.

## IV. Typicality

82.     Plaintiffs' claims are typical of those of the Class as all purchased and administered to themselves or their child products WHOLE FOODS misrepresented as effective in relieving symptoms, but did not receive the promised benefits.  Plaintiffs and the Class sustained the same injury from WHOLE FOODS' common course of conduct, and their injury was caused directly by WHOLE FOODS' uniform wrongful, illegal acts. Each Class member has sustained, and continues to sustain, damages in the same manner as named Plaintiffs as a result of WHOLE FOODS' wrongful course of conduct.

## V. Adequacy of Representation

83.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel with substantial experience handling complex litigation in general and scientific claims in particular, with experience in handling class action representation.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the resources to do so.

## VI. Requirements of Fed. R. Civ. P. 23(b)(3)

84.   The present action is appropriate for adjudication as a class action pursuant to the provisions of Rule 23(b)(3), Federal Rules of Civil Procedure.

85.   Questions of law or fact common to all class members predominate over any questions of law or fact affecting only individual members.

## VII. Superiority

86.   The class action mechanism is superior to other available methods for fairly and efficiently adjudicating this controversy, in part because:

(a)     Joinder of all individual Class members would create extreme hardship and inconvenience for the affected consumers, as they are geographically dispersed;

(b)     Individual claims are impractical as the costs of pursuing individual claims would exceed the value any one individual would have at stake.  As a result, individual Class members have little or no interest in prosecuting and controlling separate actions;

(c)     There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d)     The interests of justice would best be served by resolving the common claim of potential Class members in one forum;

(e)     Individual suits would not be cost-effective or economically maintainable;

(f)     This action is manageable as a class action.

87.     Plaintiff is unaware of any difficulty likely to be encountered in management of a class action that would preclude its maintenance as a class action.

## VIII. Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

88.     Prosecuting separate actions by or against individual class members would create risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for WHOLE FOODS.

89.     WHOLE FOODS acted or failed to act in a way generally applicable to the Class, making appropriate declaratory and injunctive relief as to the Class as a whole.

90.     WHOLE FOODS' wrongful conduct, if not enjoined, would subject Class members and other consumers to substantial continuing harm, with irreparable injury to the named Plaintiffs, Class members and other consumers damaged by that conduct.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT

91.    Plaintiffs and the Class (collectively "Plaintiffs") re-allege and incorporate paragraphs 1 through 90, *supra,* as though fully set forth herein, and further allege:

92.    Through misrepresentations that its products were effective in relieving medical symptoms, WHOLE FOODS received monetary profits from Plaintiffs.

93.    WHOLE FOODS misled Plaintiffs to believe that its products contained active ingredients capable of treating symptoms suffered by Plaintiffs or their children.

94.    In fact, the stated products had no effect on humans, and were worthless.

95.    WHOLE FOODS collected money from Plaintiffs well in excess of what Plaintiffs would have paid for a useless product.

96.    The aforementioned monies directly benefited WHOLE FOODS, and were taken to the detriment of Plaintiffs, as well as to their children.

97.    Plaintiffs believed they were paying for ingredients effective in relieving their own or their children's medical symptoms, but were inert substances with no value.

98.    WHOLE FOODS received financial benefits in the form of unjust profits.

99.    As a result, Plaintiffs have conferred a benefit on WHOLE FOODS.

100.    WHOLE FOODS knew the benefit, yet voluntarily accepted and retained it.

101.    WHOLE FOODS would be unjustly enriched if allowed to keep the benefit.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of those similarly situated, demand award in sums by which WHOLE FOODS has been unjustly enriched at Plaintiffs' expense and such other relief as to the Court may seem just and proper.

## COUNT II
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## [NAMED FLORIDA PLAINTIFFS AND STATEWIDE FLORIDA CLASS ONLY]

102.   Plaintiffs and the Class (collectively "Plaintiffs") re-allege and incorporate paragraphs 1 through 90, *supra,* as though fully set forth herein, and further allege:

103.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce. § 501.204, Fla. Stat.

104.   Plaintiffs, as consumers, have standing to pursue this claim as they suffered injury in fact and lost money or property as a result of WHOLE FOODS' acts.

105.   WHOLE FOODS engaged in, and continues to engage in, unconscionable acts or practices, and unfair or deceptive acts in conduct of its trade or commerce.

106.   WHOLE FOODS' practices were unfair, offend public policy, are immoral, unethical, unscrupulous, injurious to consumers, and violate the FDUTPA.

107.   WHOLE FOODS misled Plaintiffs to believe its products had active ingredients able to relieve their medical symptoms, despite evidence to the contrary.

108.   WHOLE FOODS' practices were "deceptive" because they were likely to, and did, deceive reasonable consumers, including Plaintiffs.

109.   WHOLE FOODS' acts intended to, and did, obtain unfair compensation.

110.   Plaintiffs relied upon WHOLE FOODS' misrepresentations.

111.   WHOLE FOODS' actions violated the FDUTPA, and were conceived, devised, planned, implemented, approved and executed within the State of Florida.

112.   WHOLE FOODS' practice of packaging and marketing its products as containing "active ingredients" able to relieve medical symptoms of diseases, ailments

or conditions was a *per se* violation of FDUTPA pursuant to § 501.203(3)(c), Fla. Stat., as such practice itself violates Florida's Drug and Cosmetic Act, § 499.007(1), Fla. Stat. ("A drug or device is misbranded . . . [i]f its labeling is in any way false or misleading.").

113.    Misbranded products cannot be legally sold, and are legally worthless.

114.    Plaintiffs sustained damages as the proximate result of such practices.

115.    § 501.211(2), Fla. Stat. creates a private right of action against Defendant.

116.    As a result of WHOLE FOODS' deceptive and unfair practices, Plaintiffs suffered damages, as they spent money on products for which they received no value.

117.    WHOLE FOODS' practices comprise a continuing course of unfair competition, as it marketed its products in a manner that offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

118.    Plaintiffs and the Class have been damaged by WHOLE FOODS' deceptive and unfair conduct as they purchased a misbranded, worthless product, or paid prices they would not have had WHOLE FOODS not misrepresented the product.

119.    Plaintiffs have suffered, and will continue to suffer, irreparable harm if WHOLE FOODS continues engaging in its deceptive, unfair, unreasonable practices.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all those similarly situated, demand judgment for compensatory damages, pre- and post-judgment interest, attorney fees, injunctive and declaratory relief, and costs of bringing this action.

### COUNT III
### NEGLIGENT MISREPRESENTATION

120.    Plaintiffs and the Class (collectively "Plaintiffs") re-allege and incorporate paragraphs 1 through 90, *supra,* as though fully set forth herein, and further allege:

121.   In packaging, advertising, marketing and selling the above-stated products, WHOLE FOODS represented to Plaintiffs that the products contained active ingredients, and were effective in relieving the symptoms that WHOLE FOODS claimed.

122.   WHOLE FOODS' representations concerning the Products were false, as the Products contained no active ingredients and had no effect.

123.   WHOLE FOODS' misrepresentations of the products' characteristics, benefits and manufacture were material because a reasonable consumer would attach importance to such representations in determining whether to purchase the products.

124.   As the products had no stated or implied purpose other than to relieve the symptoms WHOLE FOODS claimed, their lack of efficacy rendered them worthless.

125.   Defendants' misrepresentations of its Products' characteristics and benefits were false and made without reasonable grounds to believe them to be true.

126.   WHOLE FOODS knew, or should have known, its material misrepresentations of its Products' characteristics, benefits and manufacture were false.

127.   WHOLE FOODS materially misrepresented the Products' characteristics and benefits with the intent to induce Plaintiffs to purchase the Products.

128.   Plaintiffs reasonably relied upon WHOLE FOODS' material misrepresentations in purchasing the Products for themselves and their children.

129.   As a direct and proximate result of WHOLE FOODS' conduct, Plaintiffs have incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all those similarly situated, demand judgment against WHOLE FOODS in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of all those similarly situated, demand judgment against Defendant, WHOLE FOODS, including Orders:

(1)    Certifying this suit a Class Action under Rule 23(a),(b)(1) and (2), or (b)(3), Fed. R. Civ. P., and declaring Plaintiffs and their counsel representatives of the Class;

(2)    Finding Defendant has been unjustly enriched;

(3)    Finding Defendant's acts unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in trade or commerce;

(4)    Finding Defendant's conduct constituted negligent misrepresentation;

(5)    Enjoining Defendants from continuing the practices described herein;

(6)    Requiring Defendant refund all unjust benefits and pay Plaintiffs' damages resulting from Defendant's conduct, together with pre- and post-judgment interest;

(8)    Awarding Plaintiffs and the Class costs, expert and attorney fees.

(9)    Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request trial by jury as to all such issues so triable.

## ATTORNEY FEES AND COSTS

Plaintiffs and the Class have been required to retain counsel and incur costs to obtain redress of Defendant's wrongful acts, and require reimbursement of reasonable attorney fees and costs upon prevailing in this action pursuant to § 501.2105, Fla. Stat.

Respectfully submitted,


**THOMAS P. O'CONNELL, P.A.**
750 Southeast Third Avenue, Suite 204
Fort Lauderdale, Florida 33316
Telephone: (954) 527-1092
Facsimile: (954) 527-1766


By:_____
     Thomas P. O'Connell, Esq.
     Florida Bar No. 9312920
     TrialTom2@aol.com


Submitted this 21st day of August, 2014.

# Drug Facts

**Active Ingredients** — **Purpose**

Antimonium tartaricum............................Helps loosen
6C HPUS — thick mucus

Bryonia alba.....................................Relieves dry
3C HPUS — and painful cough

Coccus cacti....................................Relieves cough associated
HPUS — with a tickling in the throat

Drosera rotundifolia............................Relieves barking cough
3C HPUS — worse at night

Ipecacuanha....................................Relieves cough associated
3C HPUS — with nausea

Pulsatilla.......................................Relieves wet cough during
6C HPUS — the day becoming dry at night

Rumex crispus.................................Relieves dry cough
6C HPUS — triggered by cold air

Spongia tosta.................................Relieves dry, croupy and
3C HPUS — barking cough

Sticta pulmonaria.............................Relieves nighttime
3C HPUS — hacking cough

*The letters HPUS indicate that these ingredients are officially included in the Homeopathic Pharmacopoeia of the United States.*

**Uses**

■ temporarily relieves cough due to minor throat and bronchial irritation as may occur with a cold

■ helps loosen phlegm (mucus) and thin bronchial secretions to make coughs more productive

**Warnings**

Ask a doctor before use if the child has:

■ cough that occurs with too much phlegm (mucus)

■ cough that lasts or is chronic such as occurs with asthma or chronic bronchitis

---

## Drug Facts (continued)

Stop use and ask a doctor if cough lasts for more than 7 days, comes back, or is accompanied by fever, rash, or a persistent headache as these could be signs of a serious condition.

Keep out of reach of children.

### Directions

| Age | Dose |
|---|---|
| 2 to 12 years of age | 1 teaspoon every 2 hours |
| younger than 2 years of age | not recommended |

### Other information

■ store at 68-77°F (20-25°C)

■ contains 4.2 g of sugar per 5 mL teaspoon

■ contains 0.001% alcohol

■ Do not use if seal at base of cap is broken or missing

**Inactive ingredients:** citric acid, honey, purified water, sodium benzoate, sucrose

### Questions, Comments?

privatelabel.customerservice@wholefoods.com

---

**DISTRIBUTED BY: WHOLE FOODS MARKET**
550 BOWIE STREET • AUSTIN, TX 78703
©2010 WHOLE FOODS MARKET IP, LP
**Made in France**

---

NDC 42681-9033-1

365 ™
**BE WELL**
EVERYDAY VALUE



Cough Ease
for kids

NATURAL RELIEF OF
COUGH & CHEST CONGESTION

• multi cough formula relieves dry cough and chest congestion

• no drowsiness



HOMEOPATHIC MEDICINE

4.2 FL OZ (125 mL)
0.001% Alcohol

---

365 ™
**BE WELL**
EVERYDAY VALUE

Cough Ease for Kids is an established formula combining 9 traditional homeopathic medicines which are used to treat several types of coughs and to gently soothe your child's throat. This multi-symptom formula can help settle a nagging dry cough and naturally relieve chest congestion. Cough Ease for Kids provides reliable relief for your little one without drowsiness or risk of interactions with other medications.



| PROJECT NO. | ETU.16QW WHOLE FOODS MARKET | NOTES | 50mm W x 128mm H x 51mm D | Adult Box/VERSION2 |
|---|---|---|---|---|
| FILE NAME | Homeopathic Cough Syrup 4.2 oz | | Maximum 5 COLORS | 8.13.10  proof 17  printed @ 100% |
| DESIGNER | smd | | | |

SPOT COLORS — PMS 565 C Green

CMYK COLORS — C M Y K

449

## Cough Ease
### NATURAL RELIEF OF COUGH & CHEST CONGESTION

365 EVERYDAY VALUE
BE WELL





### Drug Facts

| Active ingredients | Purpose |
|---|---|
| Antimonium tartaricum.............. | Helps loosen |
| 6C HPUS | thick mucus |
| Bryonia alba.............. | Relieves dry |
| 3C HPUS | and painful cough |
| Coccus cacti.............. | Relieves cough associated |
| 3C HPUS | with a tickling in the throat |
| Drosera rotundifolia.............. | Relieves barking cough |
| 3C HPUS | worse at night |
| Ipecacuanha.............. | Relieves cough associated |
| 3C HPUS | with nausea |
| Pulsatilla.............. | Relieves wet cough during |
| 6C HPUS | the day becoming dry at night |
| Rumex crispus.............. | Relieves dry cough |
| 6C HPUS | triggered by cold air |
| Sponge tosta.............. | Relieves dry, croupy and |
| 3C HPUS | barking cough |
| Sticta pulmonaria.............. | Relieves nighttime |
| 3C HPUS | hacking cough |

The letters HPUS indicate that these ingredients are officially included in the Homeopathic Pharmacopoeia of the United States.

### Uses
- temporarily relieves cough due to minor throat and bronchial irritation as may occur with a cold
- helps loosen phlegm (mucus) and thin bronchial secretions to make coughs more productive

### Warnings
Ask a doctor before use if you have
- cough that occurs with too much phlegm (mucus)

### Drug Facts (continued)
- cough that lasts or is chronic such as occurs with smoking, asthma or chronic bronchitis or emphysema

Stop use and ask a doctor if cough lasts for more than 7 days, comes back, or is accompanied by fever, rash, or a persistent headache. These could be signs of a serious condition.

If pregnant or breast-feeding, ask a health professional before use.

Keep out of reach of children.

### Directions

| Age | Dose |
|---|---|
| adults and children 12 years and over | 2 teaspoons every 2 hours |
| children 2 to 12 years | 1 teaspoon every 2 hours |
| children under 2 years | not recommended |

### Other Information
- store at 68-77°F (20-25°C)
- contains 4.2 g of sugar per 5 mL teaspoon
- contains 0.001% alcohol
- Do not use if seal at base of cap is broken or missing

### Inactive ingredients: citric acid, honey, purified water, sodium benzoate, sucrose

### Questions, Comments?
privatelabel.customerservice@wholefoods.com

DISTRIBUTED BY: WHOLE FOODS MARKET
550 BOWIE STREET • AUSTIN, TX 78703
©2010 WHOLE FOODS MARKET IP, LP
Made in France

ETU.16QW  Aug 10

NDC 42681-9032-1

365 EVERYDAY VALUE
BE WELL

## Cough Ease

### NATURAL RELIEF OF COUGH & CHEST CONGESTION

- Multi Cough Formula relieves Dry Cough and Chest Congestion
- No Drowsiness
- Honey Base




HOMEOPATHIC MEDICINE

4.2 FL OZ (125 mL)
0.001% Alcohol

365 EVERYDAY VALUE
BE WELL

Cough Ease is an established formula combining 9 traditional homeopathic medicines which are used to treat several types of coughs and to soothe the throat. This multi-symptom formula helps settle nagging dry cough and naturally relieves chest congestion. Cough Ease provides reliable relief without drowsiness or risk of drug interactions.


PLEASE RECYCLE

LOT

EXP



0 99482 43713 8

449

C.IMP



# 365 EVERYDAY VALUE

# Arnica Montana 30c

## NATURAL RELIEF OF PAIN FROM SORE MUSCLES, SWELLING, STIFFNESS & BRUISING

### HOMEOPATHIC MEDICINE    NDC 42681-0508-1

## Drug Facts

*Active ingredient:* Arnica montana HPUS 30c *Purposes:* Relief of muscle aches and soreness, swelling, stiffness and bruising. *Uses:* For the conditions listed under purposes or as directed by a doctor. *Warnings: Stop use and ask a doctor if* symptoms persist for more than 3 days or worsen *If pregnant or breast feeding,* ask a health care professional before use. **Keep out of reach of children.** *Directions:* (adults and children 12 years and older) Dissolve 5 pellets under the tongue 3 times per day until symptoms are relieved or as directed by a doctor. *Other information:* Do not use if pellet dispenser seal is broken. Store at room temperature. *Inactive ingredients:* Lactose, sucrose

**DISTRIBUTED BY: WHOLE FOODS MARKET • 550 BOWIE STREET • AUSTIN, TX 78703**
©2011 WHOLE FOODS MARKET IP, LP • **PRODUCT OF FRANCE**

LOT:

EXP:

4 g
approximately
80 pellets

0   99482 44035   0



FLIP UPSIDE DOWN & TWIST LID    FLIP UPSIDE DOWN & TWIST LID